CULPEPPER, Judge
(dissenting).
I cannot agree with the majority that there is a genuine issue of material fact. The majority opinion concludes:
“The record, as presented on the motion for summary judgment, contains evidence on both sides of the issue. The affidavits submitted by Olin and its insurer support the theory that Augen-stein’s work on the TDI Unit was merely repairs; the deposition of Holden, the Project Manager for Augenstein, supports the idea that at the TDI Unit Au-genstein was building an incinerator scrubber, that there was no old scrubber unit, and that Augenstin’s work was mostly new construction.”
The majority correctly states that the affidavits submitted by Olin show that Au-genstin’s work on the TDI Unit was merely repairs. These affidavits were by the safety manager at the Lake Charles plant, the regional safety manager, and the construction manager for Olin. They explain that the Lake Charles plant of Olin Corporation produces various chemicals. One of these chemicals is toulene di-iso-cyanate (TDI), which is a gas used in the manufacture of foam rubber. The TDI Unit mentioned in the majority opinion, is that portion of the plant which produces this gas. The affidavits explain that in the production of this gas, numerous waste products are also produced, necessitating an incinerator to dispose of them.
These affidavits state that on November 6, 1973, the date of plaintiff’s alleged injury, the TDI Unit had been completed and was no longer under construction. It had been on production since August of 1973. The affidavits state that at the time of the accident, Kelly “was engaged in work designed specifically to modify and improve the operation of said processing unit and was not engaged in new construction . , but rather was engaged in routine maintenance work falling within the ambit of the trade, business and occupation of Olin Corporation.”
These affidavits by the officials of Olin are corroborated in full, both by the allegations of plaintiff’s petition and by plaintiff’s own deposition. In his original petition, plaintiff alleges that at the time of the accident he was employed as a general foreman for Augenstein Construction Company which “was in the process of removing and replacing equipment known as ‘scrubbers’ (emphasis supplied) at the Olin Chemical Corporation near Lake Charles.” Plaintiff later amended his petition to add the allegation that Augenstin was also “constructing a complete new unit known as RF 230 as well as doing some remodeling to the TDI Unit.” (emphasis supplied)
In his deposition, plaintiff states that the TDI Unit had been constructed by Blount Brothers Corporation and had been completed in about August of 1973 and placed in production. Then he testified:
“Q. Prior to that time, did you have anything whatsoever to do with the construction of the unit or with the unit after it went on stream in the summer of ’73 ?
A. I didn’t have anything to do with the main construction. I didn’t work for Blount, the contractor that built it. I worked for Augenstein, and Augenstein was doing some repair work in there, (emphasis added)
*910 Q. Now, what were you called on to do?
A. Well, I was a supervisor.
Q. Did you go into that area in October of 73 and remain in that area until December of 73, or did you have other duties in other parts of the plant or in other places outside the plant during that period of time?
A. Well, we was constructing a new unit. We were building this new addition. In fact, I don’t believe they’s finished it yet. But also, I had duties in this incinerator of the TDI unit itself. We were rebuilding the old incinerator. It wouldn’t perform or something. Anyway, we had to tear it down and rebuild it or rework it, or whatever you might call it.” (emphasis supplied)
In the following portion of his deposition, plaintiff makes it clear that at the time of the accident he was not performing duties connected with the new RF 230 plant, but was supervising the pipefitters who were repairing or remodeling the incinerator in the TDI Unit. In answer to a question as to where he was at the time of the accident, plaintiff testified:
“We was walking up the unit, and we had a west wind blowing to the east, so we passed through it. Well, I guess it was a southwest wind, I’m not sure exactly; but anyway, we passed through that area. And then we come to the north end of the unit where we was repairing this incinerator.” ^ (emphasis added)
Plaintiff testified further:
“Yes, we were repairing this incinerator., And so I stayed there approximately of an hour. Approximately, now, I can’t say for sure. And so some of the boys was leaving, and I asked one of the foreman, I says, what’s happened? He said, well, the TDI is loose, is escaping. Well, then some stayed in the unit and some didn’t.” (emphasis added)
Thus, the affidavits of the Olin officials, the allegations of plaintiff’s petition as amended, and the testimony by plaintiff in his deposition show clearly and without question that at the time of the accident plaintiff was supervising the pipefitters who were repairing or remodeling the incinerator of the TDI Unit. Olin’s uncon-tradicted affidavits show they have 163 regular employees who do such remodeling, repair and maintenance work, and 17 of these are pipefitters, the same as the men being supervised by plaintiff. However, as on this occasion, where their regular maintenance crews are busy on other jobs, they contract some of the remodeling, repair and maintenance work. Under these un-contradicted facts, the work being done by plaintiff was clearly a regular part of Olin’s trade or business.
The only document which could raise any issue of fact in this case- is the deposition of Mr. Robert F. Holden, who was the project manager for Augenstein on work they were doing for Olin at the time of plaintiff’s injury. Mr. Holden states in his deposition that when he became project manager on September 9, 1973, Augenstein was performing two jobs for Olin. They were constructing the new RH 230 plant and they were doing some work on the TDI Unit. When asked what Augenstein was doing at the TDI Unit, Holden testified:
“Q And what were they doing at the TDI unit?
A They were building an incinerator scrubber complex.
Q They were building it ? .
A It was in the process of being built, under construction.
Q Did you people ever do any work on an old scrubber unit ?
A No.
*911 Q None at all ?
A There was none.
Q And you didn’t do any repair work at Olin?
A There was no scrubber.
Q Well did you do any type of repair work, or remodeling, at Olin ?
A On the TDI complex ?
Q Yes.
A Yes.
Q What was that?
A Various stages of different parts of construction that needed modification.
Q And that’s in the old unit?
A In the new TDI complex.
Q How about in the old Unit ?
A There was no old unit.
Q There were no scrubbers or anything like that before?
A No.”
Holden’s deposition is vague, but viewing it in the light most favorable to plaintiff, he states only that the work being done on the TDI Unit was the construction of a new “scrubber” in the incinerator. We know from Olin’s affidavits and from the deposition of plaintiff himself that the TDI Unit had been completed in September of 1973 and was producing gas at the time of plaintiff’s accident in November. Of course, Olin’s affidavits and plaintiff’s deposition also state that they were “remodeling or repairing the incinerator scrubber”. But even accepting Holden’s deposition that there was no old “incinerator scrubber”, it is my view that this is not the construction of a new facility, but is merely work that falls within the trade, business or occupation of Olin, within the meaning of Section 6 of the Workmen’s Compensation Act, LSA-R.S. 23:1061. It seems clear to me, that if this were a workmen’s compensation case, we would hold that the plaintiff is entitled to compensation benefits from Olin. This being true, he should not be allowed to sue Olin in tort.
For the reasons assigned, I think the summary judgment rendered by the district court should be affirmed.